argument in the first matter on calendar, which would be the United States v. Escandon-Figueroa. MR. BERTSCHMIDT Your Honors, good morning. Gary Bertschmidt for Dr. Fallon's Mr. Escandon-Figueroa. Unless the Court has any specific questions about the first issue, I would like to begin with the second issue, which is the government's repeated use of the term loophole to describe the multiple conspiracy defense presented by Mr. Escandon. On ten separate occasions during the government's rebuttal closing argument, it described or characterized the multiple conspiracy defense of Mr. Escandon-Figueroa as a legal loophole. We believe that was error. Loophole is defined basically as a way of escaping liability, a way of avoiding a rule. And I believe MS. FALLON Well, it's really derogatory, but does a derogatory term mean reversal? The thrust of the argument was based really on the evidence. He's trying to get you to buy into this loophole, and that's wrong because here's this evidence and this evidence and this evidence. So in context, he wasn't saying it's not a defense that's available. He was just saying it's a lousy defense. MR. ESCANDON I think if the prosecutor were to structure the argument in the way Your Honor just did, I think it would be probably allowable. I think the problem with the way the prosecutor presented that particular argument to the jury was not simply saying it's a technical defense, they did not meet their burden to carry that defense or the government met its burden. MS. FALLON Well, that's kind of how I read it. And I guess, you know, I suppose one could read it either way. And to me, it was in context exactly what you just said, which is it's a technical defense, and we don't think they have the evidence for it. MR. ESCANDON I think the prosecutor utilizing that specific term in the first place, it really is the beginning of the problem. I think loophole is very akin to technicality, someone getting off on a technicality, someone using a technicality to their own benefit. I think there's a very negative connotation. MS. FALLON Well, unless that reading is required, and if it could be read or heard, as Judge Graber just suggested, then how could it be plain error, even if it were error? MR. ESCANDON I think it's plain, number one, because it occurred ten times in a rather short period of time. MS. FALLON Well, that doesn't make it any plainer. It just means it was done more  MR. ESCANDON Assuming it was error, I don't see how this could not be plain. It was over – again, it was done repeatedly. It was brought up in voir dire by a defense counsel simply to try to take the sting out of this particular defense, that Mr. Escandon was going to present in trial. And so the district court was well aware that this was an issue that the defense was concerned with. MS. FALLON Apparently, one of the best criminal defense lawyers in the circuit didn't think it was so bad, or else he was trying to create a loophole. MR. ESCANDON I'm surprised that there was no objection. MS. FALLON Well. MR. ESCANDON But he raised it after trial in the new trial motion. That was – things happened during the trial. I'm not sure why there was no objection, but the district court has a duty to keep its – MS. FALLON Well, you know what? If I were sitting on this case, I would have – it would have gone right through my ears. I mean, I just don't understand what's the problem with saying – with saying it, particularly in the context of Mr. Iredale's voir dire, which implanted the notion of loopholes in the juror's mind to begin with. I mean, what's so wrong with that argument? I mean – MR. ESCANDON Because he brought it up during voir dire, that actually almost invited the government to raise that during its closing argument. I think the opposite is true. I think it was brought up in voir dire to try to get an impartial jury panel that was not going to reject a defense simply because it was a technical defense, yet then in the rebuttal argument, the final word spoken before the jury over and over and over again, loophole, loophole, loophole, was hammered to the jury. And again, I think loophole is basically the same as technicality, and he was imploring the jury, don't let this guy get off on a technicality, which the government should not be doing. I cited two cases – or three cases from the Eleventh Circuit and Fifth Circuit where they very strongly cautioned against juries finding out about technicalities and using that as part of their deliberations or consideration of the argument. JUSTICE KAGAN But this – this was a defense that had to be presented to the jury. It wasn't their finding out about something that was – was for the court. MR. GARRETT Correct. But there was no need to characterize this. Clearly, it was a technical defense. JUSTICE KAGAN Well, there wasn't a need to, but the question is whether it was plain error not to give him a new trial because of it, which is kind of a different question, and one could construct a more genteel argument, but that really isn't the question before us. How bad does it have to be before we agree with you? MR. GARRETT I think this – this is troubling because it goes to the very heart of – of his ability to present a – a defense for which he received a jury instruction from the district court and for the jury to consider this defense on its merits based upon the evidence introduced at trial. The argument that, hey, this is a loophole, it's a technicality, goes to the very basis of that defense and the very legitimacy of it in the first place. JUSTICE KAGAN No, but he doesn't question its legitimacy in theory. He just says it's a lousy defense. He goes through the evidence. He says, this is all we're here for. We'll present you with the facts, the evidence. You decide whether it's one conspiracy. I mean, he's saying to the jury, it's up to you to decide it whether it's one or two, but it's just not a very good defense. I mean, that's what I think it says, but. MS. GOTTLIEB Let me ask you a different question if I may. Even if it were error, even if it were plain, the defendant here took the stand and admitted that he was involved in drug trafficking. There's an overwhelming amount of evidence of guilt. So why were his substantial – why would his substantial rights have been affected, even if? MR. GOTTLIEB His substantial rights were affected because, I agree, there was evidence, substantial evidence that he was a drug trafficker. He admitted he was a drug trafficker. But he still had a valid legal defense based upon multiple conspiracies. It's a recognized defense. He received a jury instruction from the district court. Obviously, the district court felt that it was a viable defense at trial. And the problem with the argument from the government is that it just cut the legs out of this defense from the very get-go and basically put in the jury's minds, this guy is trying to get off on a technicality. This is some legal loophole, like a tax loophole. And even though he explicitly never said it in those exact words, I think that the connotation of loophole and the way it was presented over and over and over again necessarily created the – MS. GOTTLIEB If there's nothing wrong with a tax loophole, if it's there, it's there. I mean, just like this. If it was there, it was there. But it's a loophole. MR. GOTTLIEB I think technicality is a better analogy here. MS. GOTTLIEB Yes, but he didn't say that. What he said was loophole. MR. GOTTLIEB There's no cases from any circuits or district courts that I could find that have addressed the specific use of the word loophole. And so the closest one I could find was technicality. And I'd like to reserve my final two minutes for rebuttal. MS. GOTTLIEB Surely. MR. GOTTLIEB Good morning, Your Honors. Timothy Coghlan for the government. Taking the lead of counsel, I would agree with what the Court seems to be pointing out. It was the context within which the rebuttal argument was made that the reference to loophole was made. And I would disagree with counsel that he was going back to what was Mr. Iredale's question in Vore Dyer about loopholes and lawyers. In fact, he was just expounding on it and showing that, as the Court has indicated, the evidence did not support this loophole. MR. GOTTLIEB Well, it seems to me, counsel, that really what was happening is that the defendant had a theory and he is entitled to a legal instruction. And then the prosecutor argued to the jury to disregard what the Court told them the law was by characterizing it as a loophole. So he was basically saying, disregard what the judge told you about this defense. It's just a loophole that he's trying to squeeze through. Now, is that an appropriate argument? MR. GOTTLIEB I don't think that was the argument that was made by counsel, Your Honor. I would say that it was in response to comments by Mr. Iredale that the government's case was overblown, that it was overreaching. He was arguing three different conspiracies, saying that, in this case, Mr. Escondón was involved in conspiracy number one, conspiracy number two. So to characterize the government's response as, this is a loophole, I think was a fair characterization of what the defense was. I don't think it was an attack on the individual himself, as set out in the case Dubria v. Smith, where he called an individual the biggest liar you'll ever meet, or called the argument that was made by the story that was presented by counsel as a bunch of trash. That wasn't it. He called it a loophole, which is, in fact, what it was. MR. EISENACH Well, so is the presumption of innocence a loophole. So why not get up and argue that that's just a loophole, that these people are presumed to be innocent? We all know the evidence is here. Well, I would agree, if he had jumped up and started arguing the presumption of innocence is a loophole, then we certainly would have plain error here. Well, what's the difference between that and his legal defense that he was entitled to have an instruction on, which is that if there are three separate conspiracies and the indictment doesn't charge him with all three of those, then he has to be acquitted. MR. EISENACH Well, I think he did have an opportunity to make that argument, and I think counsel's or the government's response and rebuttal was exactly in response to that very argument. He called that particular, he characterized that particular argument, that particular theory of the defense, as a loophole. And I think, although it certainly has a negative connotation, it's not so negative that it goes beyond the latitude that's allowed to be made in closing argument. In this particular case, he was commenting on that theory. He wasn't saying disregarded. He was characterizing it as he saw it and argued the evidence that supported the single conspiracy in this particular case. And I think the evidence that supported the single conspiracy is quite compelling. There was evidence very early on that it was, in fact, the defendant, Mr. Escondón, who had introduced both Alex and Gordo, an individual. He said there's no rim here in terms of the conspiracy. And I think Mr. Alvarez argued that in his closing statement. I would grant the Court that he certainly made reference to that term, loophole. But he didn't call it a, he didn't say a legal loophole. He just used the word loophole in connection with his argument and the characterization of the defense's argument in this case. And I don't think it rises to the standard that the Court has indicated, which is that it would somehow seriously affect the fairness and integrity of the whole judicial proceeding. I don't think it rises to that level. It certainly could be characterized, perhaps, as some type of error. Or better judgment should have been used in making that. But I don't think it swept away the single defense that counsel had in this case. Because as I think Judge Reimer pointed out, there was substantial evidence in this case, not only of the other witnesses, but by Mr. Escondón himself. He confessed when he was arrested on January 24th about his involvement. At no time did he try to characterize, I was involved here and not here. And I think Mr. Alvarez made that very argument in his closing rebuttal in this particular case. So I would grant the Court, certainly, perhaps a better choice of words could have been made. But I certainly don't think it rises to the level of plain error. And I also think, as was pointed out by the Court, this was not some new defense attorney. This was probably one of the most experienced attorneys in San Diego, criminal attorney, defending Mr. Escondón in this particular case. He didn't see it as something objectionable, and he didn't raise the objection. And so I think the review is... I know, but doesn't that create a problem for him? I mean, that when you're up arguing that it's a loophole, and then he objects to that, doesn't that draw attention to the fact that the very characterization that you're making? I certainly think it could have. That's certainly an argument that could have made. It perhaps would have drawn attention if it had been mentioned once or twice, and perhaps it would have made sense not to object. But given the characterization and the use of it on numerous occasions, if it was not to draw attention, certainly would have objected at some point in time if it was an unfair characterization. Well, it's not a reference to something outside of the record or something horrendous that it would really make any difference to call attention to, is it? I mean... I don't think so. And especially given that the court recognized that Mr. Iredale and Vordaer brought this up as something to mention and to discuss with potential jurors in connection with this. So there didn't seem to be any negative connotation when he was questioning or talking to jurors about this. And his characterization of it as a loophole doesn't seem to have bothered him somehow poisoning the panel as to this loophole idea. And I think Mr. Alvarez grabbed onto that. If he had made that argument perhaps in his opening closing, started talking about loopholes and be prepared for this loophole defense, perhaps there would be a more egregious reading of the closing and the denial of rights. But again, in this particular trial, this didn't come up until the rebuttal closing. And it was made in context of what Mr. Iredale had argued, which was that this whole charge is overblown. They're trying to hold Mr. Escondón responsible and accountable for something he wasn't involved in. There's three conspiracies here, and he's not guilty of one of them. He's guilty of two, but not this one, the one that's charged. And I think the argument is, as Mr. Alvarez characterized it, a loophole. Are there any other questions? I don't think so. Thank you very much. Mr. Bergeron. Your Honor, just a couple of quick points. The government chose to indict the case that it did with three people involved in one conspiracy. Whether Mr. Escondón was doing other things wrong with other people is immaterial to this Court's analysis. The question is, did the government prove at trial the one conspiracy alleged in the indictment? And the answer to that question is no. And the government's argument regarding loophole over and over and over again simply exacerbated the evidentiary problems it had in the first place and exacerbated the deprivation of rights that Mr. Escondón suffered because of that argument. The government also says that if it would have argued this loophole issue in its opening argument, that would have been worse. I think that's wrong. I think the final thing that the government said to the jury over and over and over again before the jury went back to deliberate was, this is a loophole, this is a loophole. And I think because that was the last thing the jury heard, Mr. Iredale had no opportunity to respond to that argument and explain to the jury again that this is a valid defense. You must consider it based upon the evidence at trial. Don't listen to this loophole stuff. This is a valid defense. Because he was never able to say that to the jury one final time, the fact that this was given to the jury right before they began deliberations, I believe, makes it actually more harmful than if it was brought up earlier. Thank you. All right. Counsel, I appreciate the argument just made from both of you and the matter just argued will be submitted. Well, next to your argument in United States v. Reynolds. I can't do it while I'm in it.
judges: Rymer, Graber, Molloy